IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DOROTHY HOLLINGSHEAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 12-00070-CG-N |
| | ) |
| MOBILE COUNTY PERSONNEL BOARD, | ) |
| et al., | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

This action is before the court on the motion to dismiss (docs. 32-33) filed by the defendant, Mobile County Personnel Board ("Board"). The matter has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the motion, plaintiff's response in opposition thereto (doc. 40), the Board's reply (doc. 41), and all other pertinent portions of the record, it is the recommendation of the undersigned that the Board's motion be **GRANTED**.

    I.  Background and Procedural History.

This *pro se* lawsuit was filed (doc. 1) by Dorothy Hollingshead on February 2, 2012, within 90 days of plaintiff's receipt of a right to sue letter (*id*. at 11) issued by the Equal Employment Opportunity Commission ("EEOC") on December 19, 2011. This

litigation centers on the following charge of discrimination signed by the plaintiff on December 15, 2011:[1]

> In November 2011, I appealed to the Respondent an unsatisfactory rating that I received on my last annual evaluation from my employer. During the hearing, James Hansen (White, Director, late 50s) denied me the following: ability to call two witnesses; all unsatisfactory evaluations my Supervisor wrote on all employees in the Department over the past ten years; and all grade reports regarding the grass I cut throughout my assigned work areas over the past two years. In November 2011, the Respondent upheld the unsatisfactory evaluation rating. I believe I was retaliated and discriminated against because I filed a race (Black), sex, and age (60) complaint against my employer.
>
> I believe I was retaliated and discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended and the Age Discrimination in Employment Act of 1967.

(*Id.* at 12). Plaintiff's EEOC charge names only the Mobile County Personnel Board as her employer. (*Id.*)

On June 11, 2012 the plaintiff filed a second amended complaint alleging, in sum, claims of "race, sex, age and retaliation" against the Board. (Doc. 20). The Board filed its Answer on June 27, 2012. (Doc. 28). The present motion to dismiss (docs. 32-33) was filed on August 7, 2012. Plaintiff timely filed a response in opposition (doc. 40) and the Board has filed a reply (doc. 41). The matter has thus been fully briefed and is ripe for consideration by the Court.

---

[1] Although plaintiff has also attached to her Complaint an EEOC charge of discrimination signed by the plaintiff on October 17, 2011, and designated as Charge No. 425-2011-01146 (docs. 1 at 13 and 3-1 at 14), the EEOC right to sue letter issued on December 19, 2011 (doc. 1 at 11) refers only to the charge plaintiff signed on December 15, 2011 which is designated by the EEOC as Charge No. 425-2012-00227 (Id. at 11 and 12 and doc. 3-1 at 16).

II.     Standard of Review.[2]

Prior to Bell Atlantic v. Twombly, 550 U.S. 544 (2007), a court could only dismiss a complaint "if it is was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," as set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This language as it relates to the Rule 12(b)(6 standard was expressly rejected in Twombly wherein the Supreme Court set forth the following standard regarding a court's determination of the sufficiency of pleading such as is in issue in this case:

> Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley, 355 U.S. at 47. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citation omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level.

Twombly, 550 U.S. at 555. The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.

---

[2] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto'." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000), quoting, GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993). All "reasonable inferences" are drawn in favor of the plaintiffs. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

The Supreme Court reinforced the Twombly standard in Ashcroft v. Iqbal, 556 U.S. 622, 677-680 (2009). The Court reiterated that a claim is insufficiently pled if it offers only "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'." Iqbal, 556 U.S. at 678, *quoting* Twombly, 550 U.S. at 557. The Supreme Court explained:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

Iqbal, 556 U.S. 622, 678-79 (citation and internal punctuation omitted). *See also*, Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008)("After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct'."), *quoting* Twombly, 550 U.S. at 553, n. 8. *See also*, Sinaltrainal v. Coca-Cola Co., 2009 WL 2431463 (11th Cir. Aug. 11, 2009)("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss [*citing* Iqbal, 129 S.Ct. at 1949] [and] [t]he well-pled allegations must nudge the claim 'across the line from conceivable to plausible'" [*quoting* Twombly, 550

4

U.S. at 570]"). With this legal framework in mind the Court now turns to the merits of the Board's motion to dismiss.

   III.   Analysis.

In its motion, the Board argues, in sum, that plaintiff has failed to exhaust her administrative remedies with respect to allegations regarding conduct well beyond the scope of her EEOC charge. The Board further argues that, with respect to plaintiff's only claim which is within the scope of the EEOC charge, namely the Board's handling in November 2011 of the second step of plaintiff's grievance of the annual unsatisfactory service rating she received from her employer, the City of Mobile, "plaintiff has failed to show that she has suffered an 'adverse employment action'" for which she may obtain relief under Title VII.

Plaintiff responds only with general, conclusory allegations that the Board "has been racially bias [sic]" and that the "majority vote" system employed by the Board is "totally unfair." (Doc. 40 at 2). Plaintiff states that "all I wanted was for them [the Board] to reverse the Unsatisfactory Rating so I did not have to worry about my job." (*Id*. at 3). Plaintiff thereby acknowledges that the Board's handling in November 2011 of the second step of her grievance from that unsatisfactory service rating is the only claim within the scope of her EEOC charge. Plaintiff does not dispute the Board's contention that all other claims involve conduct outside the scope of the EEOC charge. Although plaintiff now alleges that she was fired and denied unemployment compensation (*Id*. at 3), she does not attempt to demonstrate or even contend that her termination and denial of unemployment compensation were based on the unsatisfactory service rating at issue in

the EEOC charge. Plaintiff has presented no allegations of fact which could be held to constitute a "plausible claim" for wrongful termination as required by Twombly and Iqbal, *supra*.

Plaintiff does not take issue with the Board's description of its legislative origin and foundation[3] or with the Board's description of the grievance procedure[4] as

---

[3] The Board was created by the Alabama Legislature pursuant to the original Civil Service Act (Local Act 470, approved September15, 1939) ("the Act"). (Doc. 33-1). The Laws and Rules of the Personnel Board, last revised August 2, 2011, specifically provides that "[t]he board shall provide a meaningful and orderly procedure for the resolutions of employee grievances." (Doc. 33-1 at 9, § VII(d) of the Act).

[4] The Board's grievance procedure involves three administrative steps followed by an opportunity for judicial review. *See* Rule XVI (Doc. 33-2). Step one of the grievance procedure requires written notice of the complaint to the employee's supervisor who then arranges a conference with the department head. If the grievance is not resolved the employee may appeal to step two by giving notice to the Personnel Director of the Mobile County Personnel Board. A three member grievance committee is appointed to hear the grievance:

> The members of the Grievance Committee shall be composed of three (3) individuals, one to be a designated representative of the grievant, to be selected by the Personnel Director from a list of three (3) nominees made by the grievant, one to be a designated representative of the department head to be selected by the Personnel Director from a list of three (3) nominees submitted by the department head, and one to be selected by the Personnel Director exclusive of the Personnel Department who shall serve as Chairman of the Committee. The nominees submitted to the Personnel Department may be civil service employees or may be outside of civil service, provided, however, no person who is a relative of grievant or who is under the same direct supervisory chain of command as grievant shall be eligible to sit on such Grievance Committee.

Rule 16.6 (Doc. 33-2 at 4). The hearing before the grievance committee is informal. The committee is not "bound by the technical rules of evidence but shall seek diligently all of the information and evidence bearing on the merits of the case." (*Id.*) Fact witnesses may not exceed five persons for each party. Character witnesses are not allowed. (*Id.*) Either party may appeal the decision of the grievance committee to the Personnel Board. The third step in the procedure, a hearing before the Personnel Board, is a *de novo* hearing that follows "the same procedure and format as used by the Board in conducting disciplinary hearings appealed directly to the Board." (*Id.*) Either party may thereafter appeal the grievance to the Circuit Court of Mobile County. (Doc. 33-1 at 25 (§ XXXIV of the Act)).

established in its "Laws and Rules."  Plaintiff's allegations in her Second Amended Complaint include the following:

- "The personnel board . . . have shown a pattern of discrimination against me.  The Personnel Board shows a pretext of fair judgement [sic] but does discriminate from their practices.  The system they have set up is an underhanded scheme where the employee cannot win.  It is always two against one in their step two grievance [sic] procedure."

- "Mr. James D. Hanson . . . denied me two witnesses [Rudy Jones and Charles Sullivan] at my thrid [sic] step hearing on Tuesday January 17, 2012." . . . [And] he told the parks department to withhold information from me which I had requested."

- "The Personnel Board has a great deal to do with my employment.  Nine out of ten times the Personnel Board finds in favor of the City of Mobile."

- "In linking the Personnel Board with my very employment they stand with the City of Mobile in my charge of work related discrimination.  My case is based up on race, sex, age and retaliation discrimination."

- "[The unsatisfactory service rating at issue in this case] was just a pretext for discrimination.  I am 60 years old and a member of a protected class."

- "Dexter Johnson the Supervisor I over the Mowing Division of the Parks Department is and [sic] immoral man he used sexual language with me.  He approached me every day with unwanted advances."

- "I went to the Personnel Board four time with grievances against the City of Mobile Parks Department."

(Doc. 20 at 2-4).  In addition to her complaints concerning the unsatisfactory service rating addressed in the EEOC charge, plaintiff alleges in her Second Amended Complaint that "I intend to show in my evidence that Dan Otto the Superintendent of the Parks Department [and] Robert Voucher the Supervisor II over the mowing division of the Parks Department placed white men over blacks and the Personnel Board knew that [the]

7

appointments of these men were discrimination against black employees." (*Id*. at 4). Plaintiff then identifies Matt Holston and Toni Smith as two employees brought in from outside the merit system and complains that they were given supervisory positions for which they were not qualified. (*Id*.)

    A.    <u>Failure to Exhaust Administrative Remedies</u>.

Exhaustion of administrative remedies is a well-established predicate to any suit for discrimination under Title VII. <u>Price v. M & H Valve Co.</u>, 177 Fed.Appx. 1, **6 (11th Cir. April 7, 2006). "The first step down this path is filing a timely charge of discrimination with the EEOC." <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1317 (11th Cir. 2001). The purpose of the exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." <u>Gregory v. Ga. Dep't of Human Res.</u>, 355 F.3d 1277, 1279 (11th Cir. 2004), *quoting* <u>Evans v. U.S. Pipe & Foundry Co.</u>, 696 F.2d 925, 929 (11th Cir. 1983); *citing also* <u>Wu v. Thomas</u>, 863 F.2d 1543, 1548 (11th Cir. 1989) ("The purpose of the filing requirement is to insure that the settlement of grievances be first attempted through the office of the EEOC.") (internal quotation and citation omitted).

Consequently, the scope of the EEOC charge limits the scope of the subsequent judicial complaint. *See* <u>Alexander v. Fulton County</u>, 207 F.3d 1303, 1332 (11th Cir. 2000)( "The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation. . . [and] 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation

which can reasonably be expected to grow out of the charge of discrimination'."), *quoting, inter alia,* Mulhall v. Advance Security, Inc., 19 F.3d 586, 589 n. 8 (11th Cir.1994). In Hedgeman v. Austal, U.S.A., L.L.C., 2011 WL 2036968 (S.D. Ala. May 24, 2011) this court held that:

> Nevertheless, "[t]he failure to specifically articulate a claim in an EEOC charge is not necessarily fatal[,]" as a Title VII action may be based " 'upon any kind of discrimination like or related to the charges' allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.' " Lampkin v. United Parcel Service, 2008 WL 1925120, *3 (M.D. Ala. May 1, 2008). Thus, judicial claims may be permitted if they "amplify, clarify, or more clearly focus the allegations in the EEOC complaint," but judicial claims that allege "new acts of discrimination are inappropriate." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (*per curiam*) (internal quotation marks omitted).

2011 WL 2036968 at *3.

Plaintiff's charge of discrimination was filed on December 16, 2011 (doc. 1 at 12) and the EEOC issued a "Dismissal and Notice of Rights" to the plaintiff on December 19, 2011 (id. at 11). Plaintiff's EEOC charge is limited to the Personnel Board's handling of the second step of the plaintiff's grievance concerning the unsatisfactory annual service rating. However, the allegations in plaintiff's Second Amended Complaint (doc. 20) concerning the employment and promotion of Matt Holston and Toni Smith by the City of Mobile are completely new alleged acts of discrimination presented by the plaintiff for the first time in the judicial complaint. These allegations are also unrelated inasmuch as

plaintiff has not alleged that she sought and was denied these promotions.  In addition, there is no indication of when these hiring and promotion decisions were made.[5]

Plaintiff's allegations concerning the "third step hearing on Tuesday January 17, 2012" (doc. 20 at 2) are also beyond the scope of the EEOC charge and the Right to Sue letter, which issued prior to this hearing.  Consequently, plaintiff has failed to exhaust her EEOC administrative remedy concerning any complaint arising out of step three of the grievance procedure.  In Hedgeman, *supra*, the employee's judicial complaint alleged that he was denied promotion during a 2008-2009 period but his EEOC charge related to a failure to promote in 2006.  The Court held that the employee failed to exhaust his administrative remedies because, "[e]ven assuming that Hedgeman's failure to promote claim relating to his second term of employment are 'like or related to the charge's allegations' for the 2006 alleged instances of failing to promote, the EEOC investigatory scope could not possibly have encompassed incidents after November 13, 2006, [which] had not yet occurred."  2011 WL 2036968 at *3.  The Court specifically stated that "Hedgeman's initial charge of discrimination does not cover post November 13, 2006 promotion claims and a new charge of discrimination was required for these discrete, unlawful employment practices.  (*Id*.)  Plaintiff has failed to demonstrate that, even if step three of the grievance procedure could be deemed to be "like or related to" the discriminatory charge presented to the EEOC by the plaintiff concerning step two, the

---

[5] Pursuant to 42 U.S.C. § 2000e-5(e), a Title VII litigant is required to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act.  *See* Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982).

EEOC investigation of the allegations in plaintiff's charge concerning step two could possibly have encompassed a separate hearing conducted by different individuals well after the conclusion of the step two proceedings in November, 2011.[6]  Plaintiff has, therefore, like Hedgeman, failed to exhaust her EEOC administrative remedy concerning her complaints about the step three hearing held on January 17, 2012.

In addition, the permissible scope of plaintiff's judicial complaint is the Board's handling in November 2011 of the second step of her grievance of the unsatisfactory service rating that she received from her employer, the City of Mobile.  Plaintiff's Second Amended Complaint is due to be dismissed as to all other claims that exceed this permissible scope.

B.    Absence of Adverse Employment Action.

The statute applicable to plaintiff's claim states that it shall be an unlawful employment practice for an employer to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where a performance evaluation is tied to compensation, an unsatisfactory evaluation can constitute an adverse employment action.  *See* Gillis v. Georgia Dept. of Corrections, 400

---

[6] Plaintiff, with respect to step three of the grievance procedure, alleges only that she was "denied [] two witnesses" and that certain "information" was withheld from her at the direction of the Board's Director, James Hanson. (Doc. 20 at 2). Plaintiff fails to describe the nature of either the witness's testimony or the withheld information and offers no explanation regarding the significance of this evidence to the unsatisfactory service rating at issue in her EEOC charge.

11

F.3d 883, 888 (11th Cir. 2005)(Evaluation and compensation "were inextricably intertwined" and thus constituted an adverse employment action.); Crawford v. Carroll, 529 F.3d 961, 971-72 (11th Cir. 2008)(Plaintiff's evaluation and compensation "were inextricably intertwined"). *Cf.* Gupta v. Florida Board of Regents, 212 F.3d 571 (11th Cir. 2000)(Failure to give pay raise despite an above satisfactory evaluation did constitute an adverse employment action).

Neither the EEOC charge nor plaintiff's judicial complaint alleges that the unsatisfactory performance evaluation at issue adversely impacted plaintiff's compensation or conditions of employment.  Instead, plaintiff seeks damages in her second amended complaint from the City of Mobile for harassment and physical distress which she now claims she suffered at the hands of City of Mobile employees Dexter Johnson, Robert Vroucher, Dan Otto and Leslie Westerberg "over two and a half years." (Doc. 20 at 5).  These matters were never presented to the EEOC and plaintiff has alleged no facts which could support a plausible claim that they are connected to the unsatisfactory service rating which is the basis of the EEOC charge and the Board's handling of step two of plaintiff's grievance.

In Davis v. Town of Lake Park, Fla., 245 F.3d 1232 (11th Cir. 2001), a police officer alleged that he suffered an adverse employment action as a result of two corrective job performance memos placed in his personnel file and two instances where he was temporarily removed as the officer in charge. 245 F.3d at 1234. The court concluded Davis had not suffered an adverse employment action because he did not suffer any loss in pay or benefits. *Id*. at 1240.

Similarly, in the present case plaintiff does not dispute that she received the unsatisfactory evaluation at issue from her employer, the City of Mobile, and not from the Board.[7]  Nor does the plaintiff dispute that her step two grievance was heard by third parties who are not Board members or employees.  It was those unnamed third parties who found against her.  Plaintiff's actual complaint against the Board is limited to the hearing procedure, not the merits of the subject performance evaluation.  Specifically, plaintiff complains that:

> The system they have set up is an underhanded scheme where the employee cannot win. It is always two against one in their step two grievance."

(Doc. 20 at 2).  Plaintiff further complains that "[n]ine out of ten times the Personnel Board find[s] in favor of the City of Mobile." (Doc. 20 at 3).  Consequently, it appears that plaintiff's complaint is actually about the overall structure of the due process hearing.

The adverse action cognizable in this case is, by virtue of plaintiff's EEOC charge, limited to the unsatisfactory service rating and the Board's handling of that negative performance evaluation in the second, nondispositive step in the grievance procedure. However, such action does not constitute an adverse employment action required under Title VII.  The negative performance evaluation in this case is, therefore, even more attenuated than the negative job performance memos which did not rise to the level of an adverse employment action in Davis.  Plaintiff's second amended complaint is

---

[7] Plaintiff's theory of liability is predicated at best on agency principals that do not legally or legitimately apply.

due to be dismissed because the plaintiff has not alleged an adverse employment action which subjects the Personnel Board to Title VII liability.

## CONCLUSION

For the reasons stated above, it is recommended that the Board's motion to dismiss be **GRANTED** and this case be **DISMISSED with prejudice**.

The Clerk is directed to serve the plaintiff with a copy of this Order by both regular mail and certified mail, return receipt requested. The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this   27th   day of November, 2012.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, ***within fourteen days*** of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" ***within [fourteen] days*** [8] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Emphasis added).  A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

        **DONE** this   27th   day of November, 2012.

                                /s/ Katherine P. Nelson
                                UNITED STATES MAGISTRATE JUDGE

---

[8] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition [.]" Fed. R. Civ. P. 72(b)(2).

15